### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| JASON KOKOSZKA and HEATHER KOKOSZKA, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO: _____ |
| | ) |
| | ) |
| KNAUF GIPS KG, a German Corporation; KNAUF PLASTERBOARD (TIANJIN) CO., LTD., KNAUF PLASTERBOARD (WUHU) CO. LTD., KNAUF PLASTERBOARD (DONGGUAN) CO. LTD. Chinese limited liability corporations; ROTHCHILT INTERNATIONAL LTD., a foreign corporation; USG CORPORATION; L & W SUPPLY CORPORATION (sometimes d/b/a SEACOAST SUPPLY); and INTERIOR & EXTERIOR BUILDING SUPPLY, L.P. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs Jason Kokoszka and Heather Kokoszka ("Plaintiffs"), bring this action on their own behalf.  Plaintiffs bring this action against the following Defendants (the "Defendants"): Knauf Gips KG, Knauf Plasterboard (Tianjin) Co., Ltd., Knauf Plasterboard (Wuhu) Co., Ltd., Knauf Plasterboard (Dongguan) Co., Ltd. (collectively also referred to herein as "Knauf"); Rothchilt International Ltd.; USG Corporation; L&W Supply Corporation (sometimes d/b/a Seacoast Supply); and Interior & Exterior Building Supply, L.P.  Except as to facts regarding the Plaintiffs, all facts contained in this complaint are alleged upon information and belief.

1

## INTRODUCTION

1.      Defendants' drywall, used in Plaintiffs' home, is inherently defective because it emits various sulfide gases and/or other chemicals through "off-gassing" that creates noxious, "rotten egg-like" odors, and causes corrosion (the "Defect") of air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, electronic appliances, and other metal surfaces and household items ("Other Property").

2.      This Defect is latent and existed in Defendants' drywall at the time of installation regardless of the way the product was installed, maintained, and/or painted. There is no repair that will correct the Defect, and all of the defective drywall material must be completely removed from Plaintiffs' home.

3.      As a result of Defendants' conduct as alleged herein, Plaintiffs have suffered economic losses by owning a home containing inherently defective drywall that has caused damage to their home and Other Property.

4.      Plaintiffs have incurred or will incur tens of thousands of dollars in damages including, but not limited to: repair/replacement of their home, Other Property, any materials contaminated or corroded by the drywall as a result of "off-gassing," incidental and consequential damages.

5.      Further, as a result of Defendants' conduct as alleged herein, Plaintiffs (and thousands of others in Alabama) have suffered harm and/or been exposed to an increased risk of harm and thus have need for injunctive and/or equitable relief in the form of emergency remediation, environmental monitoring, and medical monitoring.

6.      Plaintiffs therefore bring this action to recover damages because their home

contains defective, hazardous, and/or dangerous drywall designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, installed, marketed, and/or sold by Defendants.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over the non-resident Defendants because they were and are engaged in substantial and not isolated activity and transactions within this State.  Additionally, Plaintiffs' causes of action arise from Defendants, personally or through their agents, causing injury to property within the State of Alabama arising out of acts or omissions of Defendants and, at the time of the injury, products, materials, or things manufactured, distributed, supplied, installed, marketed, sold, or otherwise provided by Defendants were used and consumed within the State of Alabama in the ordinary course of commerce, trade, or use.

8.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332 as the Plaintiffs' citizenship is diverse from all Defendants and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

## PARTIES

**Plaintiffs**

9.      Plaintiffs Jason Kokoszka and Heather Kokoszka are Alabama citizens and residents.  Plaintiffs have had substantial problems with their home, including but not limited to the corrosive effects of the sulfur and/or other compounds in the drywall.  As a result of the Defendants' conduct, they have suffered injury to personal and real property as further described herein.

3

10.    Plaintiffs own a home that was constructed with defective Chinese drywall.

**Knauf Defendants**

11.    Defendant Knauf Gips is a German corporation doing business in the State of Alabama with its principal place of business located at Postfach 10, D-97343 Iphofen, Germany. Knauf Gips is a leading manufacturer of building materials and systems.  Knauf Gips, together with its affiliates, including Knauf Tianjin, provides building materials and systems to customers in over 50 countries, including the United States.  Upon information and belief, at all material times hereto, Knauf Gips supervised, operated, trained and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, and its agents, apparent agents, and employees.

12.    Among other things, in 1995, Knauf Gips introduced its advanced production techniques and technology into China.  From 1997 through 2001, Knauf Gips invested in China and established three plasterboard plants located in Wuhu, Tianjin and Dongguan.  The product quality of all Knauf Gips' plants in China, including Knauf Tianjin, is strictly controlled according to the requirements of Knauf Gips' headquarters in Germany.  Moreover, Knauf Gips' sales and technical support teams support Knauf Gips' businesses throughout the world, including Knauf Tianjin in China.  Knauf Tianjin and its employees are the actual and/or apparent agents in Knauf Gips.

13.    Upon information and belief, Knauf Gips, together with its affiliates and/or actual or apparent agents, including Knauf Tianjin, designed, manufactured, sold, distributed, marketed and placed within the stream of commerce gypsum drywall with the expectation that the drywall would be purchased by thousands of consumers, if not more, within the State of Alabama.  Upon information and belief, Knauf Gips and/or Knauf Tianjin has continuously and systematically

distributed and sold drywall to numerous purchasers in the State of Alabama and their drywall is installed in numerous homes in Alabama.  Knauf Gips and/or Knauf Tianjin manufactured, imported and sold directly or indirectly into the State of Alabama, through a stream of commerce that included USG Corporation and its affiliate L&W Supply Corporation (sometimes d/b/a Seacoast Supply), Interior Exterior Building Supply, and Rothchilt defective gypsum drywall that was later installed into homes, thereby causing substantial damage.  Moreover, Knauf Gips and/or Knauf Tianjin purposefully availed themselves of the jurisdiction of this Court by selling and shipping substantial quantities of drywall into the State of Alabama.

14.    Knauf Gips is a leading manufacturer of drywall, building materials and systems with approximately 20,000 employees worldwide.

15.    Knauf has more than 130 production plants in over 40 countries generating annual sales in excess of $4.8 billion Euros.

16.    In 1995, Knauf began manufacturing drywall in China.  In 1997, 2000, and 2001, Knauf established three plasterboard plants located in Wuhu (Anhui province), Tianjin and Dongguan (Guangdong province), respectively.

17.    Knauf Gips, together with its agents, subsidiaries, and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) provides building materials and systems to customers in over 50 countries, including the United States, and more particularly, the State of Alabama.

18.    Knauf Gips provided defective drywall that was installed in Plaintiffs' home.

19.    Knauf Gips improperly designed, manufactured, marketed, and later distributed the subject defective drywall in the United States.  Knauf Gips also failed to provide adequate warnings regarding the hazardous and defective nature of Chinese drywall in the United States.

5

20.     Upon information and belief, at all material times hereto, Knauf Gips supervised, operated, trained, and otherwise exercised control and/or had the right to control the operations of Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan, and their agents, apparent agents, and employees.

21.     From 1997 through 2001, Knauf Gips established three plasterboard plants located in Wuhu, Tianjin, and Dongguan, China, respectively.

22.     The quality of all Knauf Gips' Chinese drywall plants in China is supervised, overseen, and controlled according to the requirements of Knauf Gips' headquarters in Germany.

23.     Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan and their employees are the actual and/or apparent agents of Knauf Gips.

24.     Upon information and belief, Knauf Gips, together with its agents, subsidiaries and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) designed, manufactured, exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold and placed within the stream of commerce drywall with the expectation that the drywall would be purchased by numerous consumers within the State of Alabama.

25.     Upon information and belief, Knauf Gips by itself and/or through its agents, subsidiaries, and/or affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) has continuously and systematically distributed and sold drywall to numerous purchasers in the State of Alabama with the knowledge that its drywall would be and is installed in numerous homes in Alabama.

26.     As discussed more fully below, Knauf Gips by itself and/or through its agents, subsidiaries and affiliates (including Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) designed, manufactured, exported, imported, distributed, delivered, supplied, inspected,

marketed, and/or sold, directly and indirectly, into the State of Alabama through a stream of commerce that included Defendants USG Corporation and its affiliate L&W Supply Corporation (sometimes d/b/a Seacoast Supply), Interior Exterior Building Supply, and Rothchilt, defective Chinese drywall that was installed in homes being built in Alabama, thereby causing substantial damage to Plaintiffs and other residents of Alabama.

27.    Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) participated in the wrongful acts herein.

28.    Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) also acted in joint enterprise, joint venture and as each other's agent within the course and scope of said agency.

29.    At all times relevant hereto, Defendant Knauf Gips and each Knauf Entity, (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan) acted by and through their employees, agents, apparent agents and representatives, who were acting within the course and scope of their employment, agency, apparent agency and representation and in the furtherance of Defendants' interests.

30.    Defendant Knauf Gips is the parent corporation of the Knauf Entities (Defendants Knauf Tianjin, Knauf Wuhu, and Knauf Dongguan). Knauf Gips individually participated, ratified, approved and directed the improper or illegal acts and omissions described herein.

**Knauf Gips' Chinese Drywall Distribution**

31.    Because of a shortage of construction materials from a booming housing market and massive damage in the United States caused by Hurricane Katrina and other disasters, domestic builders, suppliers, and importers began bringing significant stocks of foreign manufactured drywall into Alabama and the rest of the United States.

32.     At least 550 million pounds of Chinese drywall came into the United States from approximately 2004 to 2006 -- enough to construct 60,000 average-size homes.

33.     Ports in Louisiana, Texas, Florida and possibly Alabama received a large number of shipments of Chinese drywall.

34.     In the spring of 2006, the cargo ship *Great Immensity* unloaded one shipment of more than 16 million pounds of Chinese drywall manufactured by Knauf Tianjin -- enough to make approximately 1,700 homes.  The *Great Immensity* unloaded shipments at more than two dozen ports throughout the United States.

35.     Shipping records show coordination between Knauf's Chinese subsidiaries, such as sharing the same vessel to transport their product to the United States.  In April 2006, the *Yong An Cheng* took three shipments from Knauf Wuhu and a fourth from Knauf Dongguan to the United States.  All were imported by United States Gypsum Corporation, one of the largest manufacturers of domestic drywall in the United States market, and/or its affiliate L&W Supply Corporation (sometimes d/b/a SEACOAST Supply).

36.     Knauf Tianjin, one of three Knauf Gips Chinese subsidiaries, has manufactured and imported at least 20% of the imported Chinese drywall that came into the United States.

37.     Shipping information indicates that Knauf Tianjin sent at least 38.7 million pounds of Chinese drywall to the United States in 2006 and Knauf Wuhu sent at least 28.6 million pounds of Chinese drywall. Based on United States Customs and Census information, these figures would indicate that 78 percent of Chinese drywall imports in 2006 came from these two Knauf plants.

38.     Builders and contractors working in Alabama have admitted using Knauf Chinese drywall in communities in Alabama.

**Knauf Gips' Subsidiary-Knauf Tianjin**

39.    Upon information and belief, Defendant, Knauf Tianjin, is an international corporation organized under the laws of China doing business in the State of Alabama with its principal place of business located at North Yinhe Bridge, East Jingjin Road, RC-300400, Tianjin, China.

40.    Defendant Knauf Tianjin designed, manufactured and/or distributed defective drywall that is in the Plaintiffs' home.

41.    Knauf Tianjin improperly designed, manufactured, marketed, and distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Knauf Gips' Subsidiary-Knauf Wuhu**

42.    Upon information and belief, Defendant, Knauf Wuhu, is an international corporation organized under the laws of China doing business in the State of Alabama with its principal place of business located at No. 2 Gang Wan Road, RC-241009, Wuhu Anhui, China.

43.    Defendant Knauf Wuhu designed, manufactured and/or distributed defective drywall that is in the Plaintiffs' home.

44.    Knauf Wuhu improperly designed, manufactured, marketed, and later distributed the subject defective drywall in the United States.  Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Knauf Gips' Subsidiary-Knauf Dongguan**

45.    Upon information and belief, Defendant, Knauf Dongguan, is an international

corporation organized under the laws of China doing business in the State of Alabama with its principal place of business located at No.2 Xinsha Development Zone, RC-523147, Guangdong, China.

46.     Defendant Knauf Dongguan designed, manufactured and/or distributed defective drywall that is in the Plaintiffs' home.

47.     Knauf Dongguan improperly designed, manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Defendant USG Corporation and its affiliate L&W Supply Corporation (sometimes d/b/a/ Seacoast Supply)**

48.     Defendant USG Corporation is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material, was authorized to and conducted business in the State of Alabama.  Defendant USG, together with its various affiliates, including Defendant, L&W Supply Corporation (sometimes L&W Supply Corporation d/b/a/ Seacoast Supply), is the nation's largest distributor of drywall and related building products.

49.     Defendant L&W Supply Corporation (sometimes d/b/a Seacoast Supply) is a Delaware corporation with its principal place of business located at 550 W. Adams Street, Chicago, Illinois 60661, and at all times material conducted business in the State of Alabama. Defendant L&W Supply Corporation (sometimes d/b/a Seacoast Supply) has supply centers in the State of Alabama.  Defendant L&W Supply Corporation (sometimes d/b/a/ Seacoast Supply) is a subsidiary of Defendant USG.

50.     USG and its affiliate L&W Supply Corporation (sometimes d/b/a/ Seacoast Supply) improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Defendant Interior & Exterior Building Supply, L.P.**

51.     Defendant Interior & Exterior is a limited partnership with its principal place of business in Louisiana.  Interior & Exterior is a building supply company with offices in four states, and has shipped and/or supplied building products in the State of Alabama such tha it is doing business in this State.

52.     Interior & Exterior Building Supply, L.P. improperly marketed and later distributed the subject defective drywall in the United States, including Alabama. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

**Defendant Rothchilt**

53.     Defendant Rothchilt is a foreign corporation doing business in the State of Alabama with its principal place of business located at N-510 Chia Hsin BId., Annex 96 Chung Shan N. Rd. Sec. 2, Taipei, Taiwan R.O.C .

54.     Defendant Rothchilt exported, imported, distributed, delivered, supplied, inspected, marketed, and/or sold defective drywall in the state of Alabama. Directly or indirectly through agents, affiliates or co-conspirators, Defendant Rothchilt's acts or omissions related to defective Drywall have injured the Plaintiff as alleged herein.

55.     Defendant Rothchilt manufactured and distributed defective drywall that is in the Plaintiff's home.

56.     Rothchilt improperly manufactured, marketed, and later distributed the subject defective drywall in the United States. Defendant also failed to provide adequate warnings regarding the hazardous and defective nature of its defective drywall in the United States.

## GENERAL ALLEGATIONS

A.     **Drywall Background**

57.     Drywall is also commonly known as gypsum board, wallboard, plasterboard, rock lath, sheetrock, gyproc, or simply board.

58.     A drywall panel is made of a paper liner wrapped around an inner core made primarily from hardened gypsum plaster.

59.     Drywall is typically available in 4 ft wide sheets of various lengths. Newly formed sheets are cut from a belt, the result of a continuous manufacturing process.

60.     The most commonly used drywall is one-half-inch thick but can range from one quarter (6.35 mm) to one inch (25.4 mm) thick.

61.     The core material of drywall, gypsum, is available in two forms, pure gypsum, which is naturally occurring, and synthetic gypsum, which is manmade.

62.     Pure gypsum is a white to transparent mineral, but sometimes impurities color it grey, brown, or pink.

63.     Synthetic gypsum is generally manufactured with byproducts of coal- fired powerplants.

64.     Coal combustion byproducts ("CCBs" or "CCPs") are the inorganic residues that remain after pulverized coal is burned.

65.     The primary CCBs used in drywall are byproducts resulting from a utility's

attempts to remove sulfur from flue gases.

66.     In order to meet emission standards, many utilities have installed flue-gas-desulfurization (FGD) equipment. Flue gas desulfurization is a chemical process to remove sulfur oxides from the flue gas at coal-burning powerplants.

67.     Various FGD methods have been developed that chemically combine the sulfur gases released in coal combustion by reacting them with a sorbent, such as limestone of lime.

68.     As the flue gas comes in contact with the slurry of calcium salts, sulfur dioxide reacts with the calcium to form hydrous calcium sulfate, otherwise known as gypsum.

**B.     How Drywall Is Created**

69.     In order to form drywall, gypsum must be "calcined," or partially dehydrated by heating.

70.     When gypsum is heated, it loses about three quarters of its water and becomes hemihydrate gypsum which is soft and can be easily ground to a powder called hemihydrate gypsum plaster.

71.     The gypsum powder is then mixed with water to form a paste or slurry.

72.     While the hemihydrate gypsum plaster is in slurry form, it is poured between two paper layers to make drywall.

73.     Drywall is formed by sandwiching a core of wet gypsum between two sheets of heavy paper or fiberglass mats.  When the core sets and is dried in a large drying chamber, the "sandwich" becomes rigid and strong enough for use as a building material.

74.     The paste or slurry is typically mixed with fiber (usually paper and/or fiberglass), plasticizer, foaming agent, potash as an accelerator, starch or other chelate as a retarder, various additives that increase mildew and fire resistance (fiberglass or vermiculite), and water.

75.    Drywall may consist of two other materials with sulfur content: alkyl ethoxy sulfates as foaming agents and lignin or napthalene sulfonates as dispersing agents.

**C.    The Defective Drywall Emits Noxious and Corrosive Levels of Sulfur**

76.    Upon information and belief, Defendants' drywall contained naturally mined gypsum and synthetic gypsum manufactured from CCBs.

77.    When gypsum, mined or synthetic, is subjected to certain environmental conditions, the product breaks down into sulfate ions which in turn can be chemically transformed into hydrogen sulfide gas and other sulfide gases.

78.    The problem of sulfide emissions from drywall is well-understood in the drywall industry and has been studied for many years.

79.    The level of sulfides emitted from drywall may depend, in part, on contamination of the drywall with sulfur materials or the use of contaminated gypsum materials.

80.    According to a Knauf statement, the company "believes the problem drywall came from a specific [gypsum] mine, which also supplied other manufacturers." According to Knauf, the company stopped using the questionable mine in 2006.

81.    According to published reports, however, some independent environmental testing firms and building experts have said the source of the drywall problem is waste materials from the scrubbers of coal-fired power plants used to make the drywall in China.

82.    Knauf received complaints from builders and contractors about "rotten egg" smells coming from its Chinese-manufactured drywall as far back as 2006.

83.    Recently, a 2009 Knauf statement declared: "The sulfur compounds detected in testing in homes have been found at no greater levels than air outside homes or in soil, marshes or the ocean."

14

84.    Knauf's 2006 testing revealed, however, that its product released detectable, above-background levels of various sulfur containing compounds. In particular, Knauf's testing revealed the presence of iron disulfide from its Chinese Drywall as the likely source of the sulfur smells. Knauf's testing agency declared: "These data indicate that certain naturally-occurring sulfur-containing compounds can be emitted from the Knauf Tianjin product at concentrations higher than present in background air."

85.    One importer acknowledged in published reports that the defective Chinese Drywall was "well known in the industry" by 2007.

86.    Plaintiffs could not have discovered the existence of the defect in the Chinese-manufactured drywall until press reports about the defects were released in December 2008.

**D.    The Need for Medical Monitoring for the Health Effects of Sulfur Emitting Drywall**

87.    Hydrogen sulfide ("H2S"), one of the chemicals found to have been released from drywall, is considered a broad-spectrum poison, meaning that it can poison several different systems in the body, although the nervous system is most affected.

88.    The toxicity of H2S is comparable with that of hydrogen cyanide. It forms a complex bond with iron in the mitochondrial cytochrome enzymes, thereby blocking oxygen from binding and stopping cellular respiration.

89.    Exposure to lower concentrations of sulfides can result in eye irritation, a sore throat and cough, nausea, shortness of breath, and fluid in the lungs,

90.    Long-term, low-level exposure to sulfides has been associated with fatigue, loss of appetite, headaches, irritability, poor memory, and dizziness. Chronic exposure to low levels of sulfides has also been implicated in increased miscarriage and reproductive health issues.

91.    Defendants tortiously designed, manufactured, exported, imported, distributed,

delivered, supplied, inspected, installed, marketed, and/or sold defective drywall, which was unreasonably dangerous in its normal use in that the drywall caused corrosion and damage to Other Property in Plaintiffs' home and caused allergic reactions, coughing, sinus and throat infection, eye irritation, breathing hazards, other health concerns, and/or significantly increased the risk of contracting a serious latent disease.

92.     As a direct and proximate result of Defendants' actions and omissions, Plaintiffs and their home have been exposed to Defendants' drywall and the corrosive and harmful effects of the sulfide gases and other chemicals being released from these proven hazardous substances.

93.     As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, Plaintiffs have suffered, and continue to suffer damages. These damages include, but are not limited to, costs of inspection as well as the costs and expenses necessary to remedy, replace and remove the defective drywall and Other Property that has been affected.

94.     As a direct and proximate result of Defendants' defective drywall and the corrosive effects of the sulfide gases and other chemicals being released from these products, Plaintiffs have been exposed to above-background levels of sulfides and other harmful chemicals, has been placed at an increased risk of disease, and has need for injunctive relief in the form of emergency notice, remediation, environmental testing and monitoring, and medical monitoring.

## FRAUDULENT CONCEALMENT

95.     The running of any statute of limitations has been equitably tolled because of the Defendants' fraudulent concealment.  By failing to disclose a known defect to the Plaintiffs and their representatives, and misrepresenting the nature of their product as safe for its intended use,

actively concealed from Plaintiffs the true risks associated with their drywall.

96.     Plaintiffs could not have reasonably known or have learned of the manufacturing defect alleged herein and that those risks were a direct and proximate result of Defendants' acts and omissions.

97.     In addition, Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the defective nature of their drywall. Defendants were under a duty to disclose the true information about their product and they failed in that duty to the Plaintiffs.

98.     Plaintiffs had no knowledge that Defendants were engaged in the wrongdoing alleged herein due to the acts of fraudulent concealment alleged herein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Negligence - Against all Defendants)

99.     Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

100.    Defendants owed a duty to the Plaintiffs to exercise reasonable care in the a) design, b) manufacturing, c) exporting, d) importing, e) distributing, f) delivering, g) supplying, h) inspecting, i) marketing, and/or j) selling drywall, including a duty to adequately warn of its failure to do the same. Defendants' duties include, but are not limited to the following:

      a.      using reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

      b..     using reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein;

      c.      using reasonable care in the exporting of the drywall to prevent it from

containing Defects as set forth herein;

d.      using reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

e.      using reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f.      using reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g.      using reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h.      using reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.      using reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j.      using reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k.      adequately warning and instructing Plaintiff of the Defects associated with drywall;

l.      properly manufacturing the drywall to prevent it from containing the Defects as set forth herein;

m.      properly selecting the gypsum that did not contain excessive levels of sulfur;

n.      recalling or otherwise notifying users at the earliest date that it became known that the drywall was dangerous and Defective;

o.    advertising and recommending the use of drywall with sufficient knowledge as to its manufacturing defect and dangerous propensities;

p.    not misrepresenting that the drywall was safe for its intended purpose when, in fact, it was not;

q.    not manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r.    not exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

s.    not distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

t.    not concealing information from Plaintiffs regarding reports of adverse effects associated with drywall;

u.    not improperly concealing and/or misrepresenting information from the Plaintiffs and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

v.    otherwise exercising reasonable care in the design, manufacturing, exporting, importing, distributing, delivering, supplying, inspecting, marketing, and/or selling drywall to prevent it from containing Defects as set forth herein.

101.    Defendants were negligent and breached their duty to exercise reasonable care in the design, manufacture, export, import, distribution, delivery, supply, inspection, marketing, and/or sale of drywall, including a duty to adequately warn of its failure to do the same. Defendants' negligence included, but was not limited to the following:

a.    failing to use reasonable care in the design of the drywall to prevent it from containing Defects as set forth herein;

b.    failing to use reasonable care in the manufacturing of the drywall to prevent it from containing Defects as set forth herein:

c.    failing to use reasonable care in the exporting of the drywall to prevent it from containing Defects as set forth herein;

d.    failing to use reasonable care in the importing of the drywall to prevent it from containing Defects as set forth herein;

e.    failing to use reasonable care in the distributing of the drywall to prevent it from containing Defects as set forth herein;

f.    failing to use reasonable care in the delivering of the drywall to prevent it from containing Defects as set forth herein;

g.    failing to use reasonable care in the supplying of the drywall to prevent it from containing Defects as set forth herein;

h.    failing to use reasonable care in the inspecting of the drywall to prevent it from containing Defects as set forth herein;

i.    failing to use reasonable care in the marketing of the drywall to prevent it from containing Defects as set forth herein;

j.    failing to use reasonable care in the selling of the drywall to prevent it from containing Defects as set forth herein;

k.    failing to adequately warn and instruct the Plaintiff and Class Members of the Defects associated with drywall;

l.    failing to properly manufacture the drywall to prevent it from containing

the Defects as set forth herein;

m.     failing to properly select the gypsum that did not contain excessive levels of sulfur;

n.     failing to recall or otherwise notify users at the earliest date that it became known that drywall was dangerous and Defective;

o.     advertising and recommending the use of drywall without sufficient knowledge as to its manufacturing Defect and dangerous propensities;

p.      misrepresenting that drywall was safe for its intended purpose when, in fact, it was not;

q.     manufacturing drywall in a manner which was dangerous to its intended and foreseeable users;

r.     exporting and/or importing drywall in a manner which was dangerous to its intended and foreseeable users;

s.     distributing, delivering, and/or supplying drywall in a manner which was dangerous to its intended and foreseeable users;

t.     concealing information from Plaintiff regarding reports of adverse effects associated with drywall;

u.     improperly concealing and/or misrepresenting information from the Plaintiff and/or the public, concerning the severity of risks and dangers of Defendants' drywall and/or the manufacturing Defect; and

v.     failing to otherwise exercising reasonable care in the design, manufacture, export, import, distribution, delivery, supply, inspection, marketing and/or sale of drywall to prevent it from containing Defects as set forth herein.

102.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have incurred economic and other damages and is entitled to recover monetary damages for: replacement/repair of their home; the removal and replacement of all of the drywall contained in their home; the replacement of Other Property (air-conditioner and refrigerator coils, microwaves, faucets, utensils, copper tubing, electrical wiring, computer wiring, personal property, furnishings, electronic appliances, and other metal surfaces and household items); and the repair and/or replacement of any materials contaminated or corroded by the drywall.

103.    As a direct and proximate result of Defendants' acts and omissions, Plaintiffs have incurred or will incur incidental and consequential damages for the costs of moving while their home is being repaired; renting of comparable housing during the duration of the repairs; the cost of repair or replacement of the home; the loss of use and enjoyment of real property; the loss in value of the home due to the stigma attached to having defective drywall in the home; and other related expenses.   Plaintiffs have also suffered and will continue to suffer significant mental anguish and emotional distress as a result of the damage to their primary dwelling, exposure to the toxic substance, substantial loss of value of their property, and the inconvenience and stress arising out of their having dangerous and defective drywall in their home

104.    Defendants knew or should have known that their wrongful acts and omissions would result in economic, incidental, physical and consequential damages in the manner set forth herein.

105.    Defendants' conduct as set forth herein violates statutes, ordinances and/or rules and regulations.   Therefore, said conduct constitutes negligence per se.

**SECOND CAUSE OF ACTION**
**(Strict Liability – Against all Defendants)**

106.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

107.    At all relevant times, Defendants were engaged in the business of designing, manufacturing, marketing, supplying, selling, advertising, and/or distributing into the stream of commerce the drywall that is the subject of this action.

108.    The drywall installed in the Plaintiffs' home was and is unfit for its intended use. Further, the drywall constitutes an unreasonably dangerous hazard.

109.    Defendants knew and expected that the drywall would reach, and it did reach, the Plaintiffs without any substantial change in its condition.

110.    Under normal use, as alleged above, the drywall fails to perform in accordance with the reasonable expectations of Plaintiffs.

111.    The risk of harm posed by the drywall outweighs the benefits of its design.

112.    Defendants, in exercising reasonable care, should have produced, marketed, designed, manufactured, sold, advertised and/or distributed a safe drywall fit for its intended use. Had they done so, they would have prevented the injuries and damages suffered by Plaintiffs.

113.    As a direct and proximate and/or producing cause of Defendants' defective product, Plaintiffs have suffered and/or are substantially certain to suffer damages, including economic damage, damage to property and personal injury.

114.    Defendants knew or should have known of the risk posed by the drywall and the risks of damage posed to those who would use or consume the drywall but failed to provide adequate warning of the known, knowable, or foreseeable risks.

115.    Defendants' failure to adequately warn was a direct and proximate and/or producing cause of Plaintiffs' reasonably foreseeable injuries. Plaintiffs have suffered or are reasonably certain to suffer damages, including but not limited to economic damage, damage to

23

property and personal injury.

116.    Defendants' employees also engaged in this wrongful conduct, with the active and knowing participation of Defendant entities and/or the knowing endorsement, ratification, and consent of Defendants' officers, directors and/or managers.


## THIRD CAUSE OF ACTION
### (Wantonness – Against all Defendants)

117.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

118.    Defendants' wrongful conduct, as alleged in the foregoing paragraphs, was wanton in that Defendants' managing agents, primary owners, and/or other officers or directors acted with knowledge of the wrongfulness of their conduct were conscious that from the doing of such act or committing such omission injuries would likely or probably result, and despite that knowledge, wantonly manufactured, designed, sold, advertised, supplied, distributed and/or marketed the drywall without proper testing, concealing the defect, failing to correct the defect and failing to warn the purchasers of the defect.

119.    Defendants' employees also engaged in this wanton conduct, with the active and knowing participation of Defendant entities and/or the knowing endorsement, ratification, and consent of Defendants' officers, directors and/or managers.

120.    As a proximate result of the Defendants wanton conduct, Plaintiffs suffered the injuries and damages set forth herein.


## FOURTH CAUSE OF ACTION
### (Intentional Conduct and/or Gross Negligence – Against all Defendants)

121.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

122.   Defendants' wrongful conduct, as alleged in the foregoing paragraphs, was intentional and/or gross negligence in that Defendants' managing agents, primary owners, and/or other officers or directors acted with knowledge of the wrongfulness of their conduct and of the high probability that injury or damage would result and, despite that knowledge, intentionally manufactured, designed, sold, advertised, supplied, distributed and/or marketed the drywall without proper testing, concealing the defect, failing to correct the defect and failing to warn the purchasers of the defect.

123.   Defendants' employees also engaged in this wrongful conduct, with the active and knowing participation of Defendant entities and/or the knowing endorsement, ratification, and consent of Defendants' officers, directors and/or managers.

124.   Defendants' conduct constitutes gross negligence because it was so willful, wanton, reckless and/or wanting in care that it constituted a conscious disregard or indifference to the rights of Plaintiffs.

125.   As a proximate result of the Defendants' intentional and/or grossly negligent conduct, Plaintiffs suffered the injuries and damages set forth herein.

### FIFTH CAUSE OF ACTION
### (Breach of Express Warranty - Against all Defendants)

126.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

127.   Defendants expressly warranted that the drywall they designed, manufactured and/or distributed was safe, efficacious, well tested and of high quality.

128.   By designing, manufacturing, distributing, and/or selling a defective, unsafe, and poorly manufactured drywall product, Defendants have breached their express warranty.

129.   Defendants knew or should have known that their warranties were specious.

130.   Plaintiffs and/or their representatives relied on these express warranties to their detriment.

131.   As a direct result of this breach of expressed warranty, physical and economic damages have been, and continue to be, incurred by the Plaintiffs.

## SIXTH CAUSE OF ACTION
### (Breach of Implied Warranty - Against all Defendants)

132.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

133.   When Defendants designed, manufactured, distributed, and/or sold their drywall installed at Plaintiffs' home, Defendants implicitly warranted that the product was safe, efficacious, well tested and of high quality.   Plaintiffs were the intended beneficiary of these warranties.

134.   By designing, manufacturing, distributing, selling, and/or installing a defective, unsafe, and poorly manufactured drywall product, Defendants have breached their implied warranties.

135.   These implied warranties were relied on by Plaintiffs and the purchasers of the drywall, because it is understood that Defendants have knowledge as to the quality, safety and efficacy of the drywall they manufacture, distribute, sell, and/or install.

136.   As a direct result of this breach of implied warranty, physical and economic damages have been, and continue to be, incurred by Plaintiffs.

## SEVENTH CAUSE OF ACTION
### (Fraudulent Concealment - Against all Defendants)

137.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

138.   Defendants knew or should have known that Defendants' drywall was defective,

unsafe and poorly manufactured.

139.    Defendants fraudulently concealed that Defendants' drywall was defective, unsafe and poorly manufactured.

140.    Defendants knew or should have known that their drywall would cause corrosion of, among other things, electrical wiring, air conditioner coils, plumbing and other personal property throughout the effected homes.

141.    Defendants fraudulently concealed that their drywall caused damage to, among other things, electrical wiring, air conditioner coils, plumbing and other personal property throughout the effected homes.

142.    Defendants fraudulently concealed that they had received and/or otherwise learned of complaints regarding their drywall product.

143.    Defendants' above-mentioned concealments of key facts regarding the Defendants' drywall resulted in physical and economic damages that have been, and continue to be, incurred by the Plaintiffs.

144.    As a result of the Defendants' fraudulent concealments regarding their drywall product, physical and economic damages have been, and continue to be, incurred by the Plaintiffs.

## EIGHTH CAUSE OF ACTION
### (Fraudulent Misrepresentation - Against all Defendants)

145.    Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

146.    Defendants fraudulently alleged to the public that the Defendants' drywall was safe, efficacious, well tested and of high quality.

147.    Defendants knew the above-mentioned representations made to members of the public were specious and fraudulent.  These representations were made recklessly and with the

intent of defrauding members of the public.

148.   Defendants' drywall was installed in Plaintiffs' home in reliance on the veracity of the above-mentioned fraudulent representations.

149.   As a result of Defendants' fraudulent representations regarding their drywall product, physical and economic damages have been, and continue to be, incurred by the Plaintiffs.

## NINTH CAUSE OF ACTION
### (Negligent Misrepresentation - Against all Defendants)

150.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

151.   As discussed herein, Defendants fundamentally misrepresented material facts regarding the characteristics of the drywall and omitted other material facts that should have been disclosed to the Plaintiffs and the public.

152.   In disseminating information regarding the drywall, Defendants negligently caused statements to be made, which they knew or should have known were inaccurate and untrue.

153.   As a direct and proximate result of the Defendants' negligent misrepresentations and omissions of material facts regarding the defective drywall, physical and economic damages have been, and continue to be, incurred by the Plaintiffs.

## TENTH CAUSE OF ACTION
### (Unjust Enrichment - Against all Defendants)

154.   Plaintiffs adopt and restate the preceding paragraphs as if fully set forth herein.

155.   Each Defendant individually and collectively profited from the sale of the defective drywall to Plaintiffs, receiving payment themselves or through an agent.  Defendants

received payment for the defective drywall and have retained those sums to the detriment of the Plaintiffs.

156.    Defendants' receipt and retention of the profits gained by sale of the defective drywall used in Plaintiffs' home is unjust and inequitable.

157.    As a direct and proximate result of Defendants' conduct complained of herein Plaintiffs have sustained substantial damages, including, but not limited to: the removal and replacement of the defective drywall and/or the home, replacement of any and all mechanical and structural systems damaged in the home, replacement of personal and other property damaged, costs of moving to alternative housing while repairs are made, costs of comparable alternative housing, loss of use and enjoyment of the home and compensation for the reduced value of the home as the result of perception of the homes as tainted by the defective drywall.

158.    Defendants knew or should have known of the damages their defective drywall would cause as described herein.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby respectfully demand a trial by jury as to all issues triable as a matter of right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Honorable Court grant the following relief:

An order requiring that Defendants pay compensatory and punitive damages to Plaintiffs to the full extent permitted by the law, which are in excess of the jurisdictional requirements of this court;

An order requiring medical monitoring;

Costs and expenses in this litigation, including, but not limited to, expert fees, filing fees, and reasonable attorneys' fees; and

Such other relief as the Court may deem just and appropriate.

Dated:  June ___ , 2009

Respectfully submitted,

**SANFORD BARLOW LLP**

/s/Shelly A. Sanford_____
Shelly A. Sanford
Federal Bar No. 19105
Texas Bar No. 00784904
Alex Barlow
Federal Bar No. 636713
Texas Bar No. 24006798
1500 McGowen, Suite 250
Houston, Texas 77004
713-524-6677
713-534-6611 Fax

**PRO HAC VICE MOTION TO BE FILED**

**STONE, GRANADE & CROSBY, P.C.**

/s/George R. Irvine, III_____
GEORGE R. IRVINE, III  (IRVIG4725)
7133 Stone Drive
Daphne, Alabama 36526
251-626-6696
251-626-2617 Fax

**YANCE LAW FIRM, LLC**

/s/R. Tucker Yance_____
R. TUCKER YANCE (YANCR9775)
169 Dauphin Street suite 318
Mobile, AL  36602
(251) 432-8003
(251) 432-8009 FAX
rty@yancelaw.com

**Attorneys for the Plaintiffs**

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

(b) County of Residence of First Listed Plaintiff **Baldwin**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **NONE**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Shelly Sanford
1500 McGowen, Suite 250
Houston, TX 77004    713-524-6677

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 362 Personal Injury - | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | Med. Malpractice | of Property 21 USC 881 |  | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 365 Personal Injury - | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 368 Asbestos Personal | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Injury Product | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Liability | Safety/Health |  | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | **PERSONAL PROPERTY** | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☒ 380 Other Personal | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | Product Liability | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General |  | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  | Under Equal Access |
|  | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - |  | to Justice |
|  | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee |  | ☐ 950 Constitutionality of |
|  | Other |  | ☐ 465 Other Immigration |  | State Statutes |
|  | ☐ 440 Other Civil Rights |  | Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. section 1332

Brief description of cause: Product liability suit for defective drywall.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ More than $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE                DOCKET NUMBER

DATE 6-23-09

SIGNATURE OF ATTORNEY OF RECORD *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____



"Terry Gomez"
&lt;tgomez@sanfordbarlow .com
&gt;

06/23/2009 04:46 PM

To   &lt;efile_newcases@alsd.uscourts.gov&gt;

cc

bcc

Subject   RE: FW: Civil Cover Sheet

**Sorry about that.  Do you need me to redo the form?**

**JASON KOKOSZKA and**
**HEATHER KOKOSZKA,**
**Plaintiffs,**

**vs.**

**KNAUF GIPS KG, a German Corporation;**
**KNAUF PLASTERBOARD (TIANJIN) CO., LTD.,**
**KNAUF PLASTERBOARD (WUHU) CO. LTD.,**
**KNAUF PLASTERBOARD (DONGGUAN) CO. LTD. Chinese limited liability**
**corporations;**
**ROTHCHILT INTERNATIONAL LTD., a foreign corporation;**
**USG CORPORATION;**
**L & W SUPPLY CORPORATION (sometimes d/b/a SEACOAST SUPPLY); and**
**INTERIOR & EXTERIOR BUILDING SUPPLY, L.P.**

Terry Ann Gomez
Paralegal
Sanford Barlow LLP

**From:** Sharon_Kennedy@alsd.uscourts.gov [mailto:Sharon_Kennedy@alsd.uscourts.gov] **On Behalf Of**
efile_newcases@alsd.uscourts.gov
**Sent:** Tuesday, June 23, 2009 4:46 PM
**To:** Terry Gomez
**Subject:** Re: FW: Civil Cover Sheet

no parties listed here

"Terry Gomez" &lt;tgomez@sanfordbarlow.com&gt;

06/23/2009 04:41 PM

To &lt;efile_newcases@alsd.uscourts.gov&gt;
cc
Subject FW: Civil Cover Sheet